Greco, J.
This is the consolidation of Dist./Mun. Cts. R. A. D. A., Rule 8A appeals in two G.L.c. 90, §34M actions to recover Personal Injury Protection (“PIP”) benefits for chiropractic treatment undergone after an independent medical examination (“IME”) had determined that further treatment was unnecessary because the insureds “had reached a medical end result without impairment and without residuals.” The appeals present a single issue of law as to whether an insurance carrier may refuse to pay such chiropractic bills on the basis of the IME and without submitting the bills for additional medical review by another chiropractor.
*246 After trial in each case, the court concluded that the medical expenses incurred after the IME were not necessary, and entered judgment for the defendant insurer. The plaintiff-insureds appealed the court’s denial of their. Mass. R. Civ. R, Rule 64A requests for rulings of law which appropriately raised the issue framed above. Based on the undisputed facts and the trial judge’s findings, the following appears.
On May 1, 1996, plaintiffs Joyce Miller (“Miller”) and Theodore Kocur (“Kocur”) were involved in an automobile accident in Peabody, Massachusetts as occupants of a vehicle insured by defendant Arnica Mutual Insurance Company (“Arnica”). Both plaintiffs were treated at the North Shore Medical Center emergency room and released. Miller was diagnosed as having a minor head injury with no abnormalities beyond a “minimal tenderness to palpitation on the right parietal scalp.” Kocur suffered a cervical strain.
Shortly after the accident, both plaintiffs began treatment with two chiropractors, Steven Galina (“Galina”) and Joseph Sabino (“Sabino”). Following receipt of the plaintiffs’ respective PIP claims, Arnica requested independent medical examinations pursuant to G.L.c. 90, §34M.
Miller was examined on June 26,1996 by David Quinn, a chiropractor. On the basis of his IME[2] and review of available medical records, Dr. Quinn concluded that Miller had “reached a medical end result without impairment and without residual” and that there was “no objective data that would translate into the medical necessity of an ongoing partial disability status.” Arnica paid all chiropractic bills in the total amount of $3,812.00 for treatment received by Miller through June 26,1996, and informed Miller that it would not provide payment for any treatment received after the date of the June 26,1996 IME. While Dr. Galena and Dr. Sabino disagreed with Dr. Quinn’s evaluation, their examination notes for all appointments after June 26,1996 show that Miller made no new complaints, that no different treatment was provided, and that there were no new medical events, no relapses, no complications, no setbacks and no new procedures indicated. Miller nevertheless continued to receive treatments from Dr. Sabino through July 29, 1996 and from Dr. Galena through August 21, 1996, thereby incurring additional bills in the total amount of $577.00.
Similarly, Kocur was examined by Dr. Quinn on June 12, 1996. Kocur had by that date returned to work as a painter. At the conclusion of the IME,[3] Quinn reported that Kocur’s “prognosis [was] good, and he [had] reached a medical end result ... without impairment and without residuals.” Arnica paid a total of $2,879.00 for all of Kocur’s medical bills through June 12,1996, and advised him that it would not pay for any additional treatment received after the date of the IME. As with Miller, Kocur continued his visits with Dr. Galena and Dr. Sabino through August, 1996 which resulted in additional chiropractic expenses of $2,035.00. Again as in Miller’s case, there were no significant differences in the nature of Kocur’s complaints or the doctors’ treatment before and after the date of *247 the June 12,1996 IME.
The plaintiffs’ claims for payment of chiropractic expenses incurred after definitive independent medical examinations require us once again to review that provision of G.L.c. 90, §34M which states:
[N]o insurer shall refuse to pay a bill for medical services submitted by a practitioner registered or licensed under the provisions of chapter one hundred and twelve, if such refusal is based solely on a medical review of the bill or of the medical services underlying the bill, which review was requested or conducted by the insurer, unless the insurer has submitted, for medical review, such bill or claim to at least one practitioner registered or licensed under the same section of chapter one hundred and twelve as the practitioner who submitted the bill for medical services.
The plaintiff-insureds contend that this provision prohibited Arnica from refusing to pay Dr. Galena’s and Dr. Sabino’s bills for services rendered after the date Dr. Quinn concluded that a medical end result had been reached unless Arnica first submitted those bills to a chiropractor for review. We disagree.
“The familiar rule of statutory construction requires us to interpret a law so as to effectuate the intent of the Legislature in enacting it.” International Org. of Masters, Mates & Pilots v. Woods Hole, Martha’s Vineyard & Nantucket S.S. Auth., 392 Mass. 811, 813 (1984). See also, Singer Friedlander Corp. v. State Lottery Commission, 423 Mass. 562, 564-565 (1996); Empire Masonry Corp. v. Franklin, 28 Mass. App. Ct. 707, 715 (1990). The No Fault Insurance law was intended “not only to create an inexpensive procedure for obtaining full compensation for injuries sustained in automobile accidents, but also to control the skyrocketing costs of automobile insurance in this State.” Im v. Metropolitan Prop. & Liab. Ins. Co., 1994 Mass. App. Div. 113, 114. See also, Creswell v. Medical West Community Health Plan, Inc., 419 Mass. 327, 328 (1995). It would certainly increase an insurer’s operating costs — costs which presumably would be passed on to consumers — if after incurring the expenses of an IME which concluded that an end result had been reached, the insurer was required to incur the additional expenses of a medical review of each and every bill submitted thereafter.
Such an impact on the cost of insurance in this Commonwealth would have to be tolerated if the statute required it. Section 34M, however, requires no such result. Indeed, the express language of the statute supports Arnica’s contrary position. Section 34M specifically mandates that an injured claimant cooperate with the insurer’s request that he undergo an independent examination. The utility of such a medical examination would be unjustifiably minimized if the insurer could not rely on it in deciding whether to pay bills submitted. Although arguing that an IME may not affect the payment of future bills, the plaintiff-insureds in these cases concede that an IME constitutes “a medical review of the bill or of the medical services underlying the bill.” As noted in their brief, “[ojbviously, it would be absurd to argue that a paper review of medical records, without the patient present, would satisfy the statute while a review of records in connection with an exam would not.” However, there is-no basis in the statute to restrict the insurer’s reliance on an IME to only bills for services rendered before the examination. While such a limitation might be appropriate in some instances, it has no place where the IME determines that a medical end result has been reached. Obviously implicit in the medical end result finding is the conclusion that any further medical treatment is unnecessary.
Moreover, Arnica has complied not only with the Legislative intent and policy underlying §34M, but also with the letter of that law. The statute bars the insurer from refusing to pay a bill based solely on a medical review “unless the insurer has *248 submitted, for medical review, such bill or claim” (emphasis supplied) to a practitioner licensed in the same field. “Wherever possible, [a court will] give meaning to each word in the legislation; no word in a statute should be considered superfluous.” International Org. of Masters, Mates & Pilots, supra at 813. See also, Bankers Life & Cas. Co. v. Commissioner of Ins., 427 Mass. 136, 140 (1998); Bartlett v. Greyhound Real Estate Fin. Co., 41 Mass. App. Ct. 282, 289 (1996). A bill and a claim are two different items. An insurer need not, therefore, submit a bill for medical review as long as it has submitted the claim. In these cases, Dr. Quinn, a licensed chiropractor, determined that any medical treatment rendered after the date of the IME was unnecessary. Thus the claim for such further treatment was rejected. The bills submitted thereafter related to the same claim. As the trial judge implicitly found and as the medical records discussed above indicate, there was no “showing that the condition of the insured [s] ha[d] changed or that there [was] new information for the insurer to consider.”
Accordingly, the plaintiffs’ requests for rulings of law to the effect that Arnica was obligated to submit, for further review, bills for treatment rendered after the independent medical examinations in these cases were correctly denied. The trial court’s judgment for the defendant in each case is affirmed. Appeals dismissed.
So ordered.

 Upon examining Ms. Miller, Dr. Quinn found that she was “not in any acute distress and assume[d] a normal posture in the seated and standing positions.... Her gait and station [were] normal. She [was] able to heel and toe walk without difficulty. There [was] no scoliosis noted on forward bending.” Dr. Quinn also found that Miller’s “[r]ange of motion of the cervical and lumbar spine were full” and that she “moved throughout the examination process in a pain-free manner.”

 Quinn’s “sensory, motor and vibratory analysis” of Kocur indicated that he was “within normal physiologic parameters.... His active range of motion of cervical and lumbar spine [was] full.” While Kocur complained of occasional lower back ache, Dr. Quinn found no “areas of appreciable myospasm and joint restriction. ... There was no positive orthopedic test.”